IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 07-00093-01-CR-W-ODS |
| | ) | |
| RINGLING DAN COHN, | ) | |
| | ) | |
| Defendant. | ) | |

## DETENTION ORDER

On March 19, 2007, I held a detention hearing. I find by a preponderance of evidence that there is no condition or combination of conditions of release that will reasonably assure the appearance of Defendant as required. In addition, I find by clear and convincing evidence that Defendant poses a danger to the community and that no single condition of release or combination of conditions of release will reasonably assure the safety of the community.

### *I. BACKGROUND*

On March 13, 2007, an indictment was returned charging Defendant with fourteen counts of bank fraud, in violation of 18 U.S.C. § 1344; one count of mail fraud, in violation of 18 U.S.C. § 1341; and one count of criminal forfeiture, pursuant to 18 U.S.C. §§ 1344 and 982(a)(2)(A). Defendant was arrested and appeared before me on March 15, 2007, for his initial appearance. The government filed a motion for a detention hearing and a motion to continue the hearing. Those motions were granted, and Defendant was remanded to the custody of the United States Marshal pending the hearing.

On March 19, 2007, a detention hearing was held. Defendant appeared in person, represented by appointed counsel Ronna Holloman-Hughes. The government was represented by Assistant

United States Attorney Mike Warner. The parties stipulated that the court consider the information in the Pretrial Services Report of Pretrial Services Officer Penny Hodges as the testimony she would give, under oath, if called as a witness. The government called Sgt. Greg Volker and Det. Debbie Panuco as witnesses; Defendant called Patricia Foreman to testify.

## II. FINDINGS OF FACT

On the basis of the information contained in the report of Pretrial Services Office Penny Hodges and the respective testimony of Sgt. Volker, Det. Panuco, and Patricia Foreman, I find that:

1. Defendant, 55, stated he has lived in Wisconsin, North Carolina, Missouri, and Illinois, but has been residing in Kansas City since 1989. He reported living at 1486 East 76th Terrace, Kansas City, Missouri, with his wife Patricia Foreman (to whom he is not legally married). Ms. Foreman's daughter and granddaughter also reside in the home.

2. Defendant advised that although he has never been legally married, he has referred to Ms. Foreman as his wife since 1989. He never fathered any children, but has assisted Ms. Foreman in raising her two daughters, ages 27 and 25; he also helps raise Ms. Foreman's nine-year-old granddaughter. Ms. Foreman's oldest daughter resides at 1486 East 76th Terrace and is her full-time care giver; the youngest daughter resides locally and is unemployed.

3. Defendant's parents are deceased. He indicated he has not had contact with his thirteen siblings since 1972, and has no knowledge of their whereabouts.

4. Defendant has a high school diploma and has been unemployed since 2001. He cared for Griffith Coombs prior to his death, and the trust of Griffith Coombs was his sole source of support. In fact, the home in which he resides is owned by and maintained through the trust. Defendant previously worked as a cab driver at Yellow Cab for eight to ten years. He indicated his

2

only financial asset is a 2004 Chrysler 300; his only financial liability is credit card debt that he declined to discuss as it is attached to the estate.

    5.    Defendant stated he is in good physical/mental health. He has no history of alcohol or drug abuse.

    6.    Defendant's criminal history includes the following:

| Date | Charge | Disposition |
|---|---|---|
| 09/24/74 | Auto Theft (FELONY) | 10/01/74 - 6 months SIS probation |
| 01/26/81 | Assault | Unknown |
| 12/10/85 | (1) Larceny<br>(2) Armed Robbery | (1) 06/21/91 - Nolle Pros<br>(2) 12/01/85 - Transfer |
| 03/11/86 | Armed Robbery (FELONY) | 6 years |
| 07/26/93 | Harassment | 09/17/93 - Released |
| 07/28/93 | Ethnic Intimidation - Second Degree | 01/10/94 - 1 year SES, 2 years probation |
| 08/15/95 | Miscellaneous City Violation | 02/24/96 - Dismissed |
| 12/25/95 | Simple Assault | 08/19/96 - 1 month, 15 days; fine |
| 01/01/96 | Larceny under $200 | 01/01/96 - Turned over to Lafayette County, Missouri |
| 01/02/96 | Failure to Appear | 02/24/96 - Guilty |
| 03/06/96 | Assault | Unknown |
| 04/04/96 | Aggravated Assault | 04/05/96 - Released |
| 10/16/98 | Larceny under $200 | 10/16/98 - Turned over to Lafayette County, Missouri |
| 11/23/98 | (1) Assault - First Degree<br>(2) Unlawful Use of Weapon<br>(3) Assault - Third Degree (Injury) | 01/14/99 - Dismissed |
| 09/24/99 | Assault | Unknown |

| 02/03/01 | Operating Motor Vehicle with Suspended Driver's License | Amended to Defective Equipment |
| 07/22/02 | Simple Assault | 09/26/02 - Dismissed |
| Unknown | Stealing | Pending Court Date: 04/10/07 |

7.      With regard to his 1986 armed robbery charge, Defendant reported he was not afforded bond. He stated he received three years of credit, only serving three years of his sentence.

8.      Concerning Defendant's 1994 conviction for ethnic intimidation, a Kansas City, Missouri Police Department report dated May 17, 1993, states that the victim reported receiving threatening phone calls from Defendant since April 6, 1993. On May 17, 1993, the victim ordered a pizza from Antonio's. After the delivery driver (Defendant) arrived at her residence and saw she was black, he refused to accept her check. He stated that black people wrote bad checks and did not pay their bills. During the dispute, the pizza was dropped on the porch and Defendant told her she could have it. However, he returned with the police a short time later, stating she refused to pay. The victim reported she was required to pay cash for the pizza; she further advised that after the incident she continued to receive obscene and threatening calls. On April 9, 1993, the victim put a trace on her phone. After a few weeks she was instructed by the phone company to make the necessary reports. The victim provided a tape of the conversations to the police. She also reported observing Defendant's vehicle drive by her home on more than one occasion.

9.      With regard to Defendant's 1996 conviction for simple assault, a Kansas City, Missouri Police Department report states that Defendant and the victim had a verbal altercation. Defendant threatened the victim with a tire iron he took from the trunk of his car. While he did not strike the victim with the tire iron, he reportedly slapped him repeatedly and punched him in the chest. The victim reported Defendant ran to his vehicle; in an attempt to get

Defendant to remain at the scene, the victim stood at the rear of the vehicle. Defendant backed up quickly, forcing the victim to jump out of the way. He then struck the victim's car and left the scene.

10. The Kansas City, Missouri Police Department report regarding Defendant's March 6, 1996, assault charge states that the victim reported leaving his residence after the police were dispatched on a reported disturbance between he and his girlfriend. The victim stated he was walking on the street when the driver of a Yellow Cab jumped from the car yelling and reached into his trunk to get a car jack. The suspect began striking the victim, stating "I'll show you" and "you'll never do that again." The victim stated his girlfriend was sitting in the cab during this altercation, verbally encouraging the suspect. The victim had various lacerations on his body and was transported to the hospital via MAST. Further reports indicate Defendant initially reported he was called to pick up a fare at the victim's residence, but did not do so because of an altercation between her and her boyfriend. Defendant later reported picking up the fare and becoming involved in an altercation with the victim; he stated he was protecting himself and the fare.

11. Concerning Defendant's 1999 assault charge, Kansas City, Missouri Police Department records show that on September 24, 1999, the victim arrived at the Courtyard Marriott to pickup his fare. While making contact with the customers, Defendant arrived in his taxi. Defendant began arguing with the victim over the fare. The victim reported Defendant acting as though he was walking away and then quickly turning and slamming the door of the victim's taxi. The victim's arm was caught between the frame and door. MAST was contacted to treat the lacerations on the victim's arm.

12. Before executing the arrest warrant on Defendant for the instant alleged offense, Kansas City, Missouri police officers set up surveillance on Defendant's residence. The officers

5

Case 4:07-cr-00093-ODS   Document 13   Filed 03/20/07   Page 5 of 9

were familiar with Defendant and his vehicle due to previous contacts. Shortly after beginning surveillance, Sgt. Volker observed Defendant leave the residence in his vehicle. Defendant had his left turn signal on, signaling to turn north at a stop sign at 76th Terrace and Paseo Boulevard. As Sgt. Volker pulled his unmarked vehicle up to Paseo Boulevard, Defendant immediately turned right, opposite of his turn signal. The vehicle was observed traveling south at a high rate of speed, approximately 65-70 mph in a 35 mph zone. Defendant made a sharp left turn at 83rd Terrace and Paseo Boulevard, one block north of Center Elementary School, where school buses and parents were utilizing Brooklyn and Paseo Boulevard to drop students off at school. The officers were concerned by Defendant's high rate of speed in the school zone.

Officers then observed the vehicle pulling into a driveway at 2109 East 83rd Terrace. After waiting one minute for marked patrol vehicles, the officers saw Defendant leave the driveway and turn eastbound on 83rd Terrace and Brooklyn, proceeding north onto Brooklyn. Defendant continued to travel at a high rate of speed and turned west toward Paseo Boulevard. When Defendant reached Paseo, Det. Panuco observed him traveling south at a high rate of speed on Paseo Boulevard. Officers lost sight of the vehicle after Defendant made a sharp turn. A perimeter was set up, and Defendant was ultimately observed parking the vehicle behind the residence located at 2109 East 83rd Terrace. The owner of the residence owner allowed officers access into his home. When Defendant was taken into custody he stated, "I could have lost you old man, and that bitch dyke of yours, anytime I wanted to. I am the last real man and you were stupid for following me so close." Defendant also indicated he knew he was being followed by the police.

13. The Kansas City Police Department has been investigating Defendant since June of 2005 with regard to Defendant's relationship with Griffith Coombs. Mr. Coombs was a very wealthy

6

retired antiques dealer who did not have any family in the area. He fell in July of 2003, and doctors implanted a shunt in his brain. Defendant began having more frequent contact with Mr. Coombs after this incident. Mr. Coombs was first transferred to a nursing home, but ultimately moved into an independent living facility. While there, Defendant and his family appeared to take over; Mr. Coombs changed his will, various power of attorneys, and his lawyers. Personnel from the independent living facility complained that Defendant was monopolizing Mr. Coombs. When they advised that Mr. Coombs needed around-the-clock care, Defendant hired his wife and her two daughters.

Mr. Coombs resided in the in the independent living facility for approximately one year. Then, in the middle of the night, Defendant moved Mr. Coombs into the basement of Defendant's home. The room in which Mr. Coombs was kept was approximately 12x12 and had a narrow bed; there were no bathroom facilities located inside the room. In September of 2005, the Division of Senior Services and the Public Administrator obtained a court order and removed Mr. Coombs from Defendant's home. Officials found Mr. Coombs in poor health, confused and wearing only a waffle knit shirt and blanket. He was taken to the hospital where he passed away two weeks later.

14. Defendant's alleged scheme is extensive and the quantity of the government's evidence is substantial. If convicted, defendant is facing mandatory jail time and large potential restitution obligations.

15. Detective Panuco has made contact with Defendant on at least three occasions. As part of the investigation, she has also spoke with many of the individuals who have interacted with him, including nursing home personnel, bank personnel and Mr. Coombs' doctors. Each of these individuals were able to observe Defendant frequently. Their descriptions of Defendant were all

consistent with her observations, as well as with Defendant's arrest history, concerning Defendant's propensity for violence.

### III. CONCLUSION

I find by a preponderance of the evidence that no single condition of release or combination of conditions of release will reasonably assure the appearance of Defendant as required. The government has substantial evidence against Defendant showing extensive predatory conduct. Defendant is facing mandatory jail time and large restitution obligations if convicted of these charges. He attempted to evade police when they sought to execute the arrest warrant for the instant alleged offenses. Defendant's criminal history also reveals he was found guilty of failing to appear in state court. Finally, Defendant does not have any ties to the community through employment or property ownership.

In addition, I find by clear and convincing evidence that no single condition or combination of conditions of release will reasonably assure the safety of the community. Defendant is charged with fourteen counts of bank fraud and one count of mail fraud, all of which evidence predatory behavior and an exertion of undue influence. His criminal history includes multiple assault charges, and Detective Panuco testified that this history comports with her opinion of Defendant's propensity for violence. While police attempted to arrest Defendant for the instant alleged offenses, Defendant traveled at a high rate of speed near an elementary school where children were being dropped off for school; he also failed to stop at a stop sign.

It is, therefore

ORDERED that Defendant be committed to the custody of the Attorney General or his authorized representative for detention pending trial. It is further

8

Case 4:07-cr-00093-ODS   Document 13   Filed 03/20/07   Page 8 of 9

consistent with her observations, as well as with Defendant's arrest history, concerning Defendant's propensity for violence.

### III. CONCLUSION

I find by a preponderance of the evidence that no single condition of release or combination of conditions of release will reasonably assure the appearance of Defendant as required. The government has substantial evidence against Defendant showing extensive predatory conduct. Defendant is facing mandatory jail time and large restitution obligations if convicted of these charges. He attempted to evade police when they sought to execute the arrest warrant for the instant alleged offenses. Defendant's criminal history also reveals he was found guilty of failing to appear in state court. Finally, Defendant does not have any ties to the community through employment or property ownership.

In addition, I find by clear and convincing evidence that no single condition or combination of conditions of release will reasonably assure the safety of the community. Defendant is charged with fourteen counts of bank fraud and one count of mail fraud, all of which evidence predatory behavior and an exertion of undue influence. His criminal history includes multiple assault charges, and Detective Panuco testified that this history comports with her opinion of Defendant's propensity for violence. While police attempted to arrest Defendant for the instant alleged offenses, Defendant traveled at a high rate of speed near an elementary school where children were being dropped off for school; he also failed to stop at a stop sign.

It is, therefore

ORDERED that Defendant be committed to the custody of the Attorney General or his authorized representative for detention pending trial. It is further

ORDERED that Defendant be confined in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. It is further

ORDERED that the Attorney General or his authorized representative ensure that Defendant is afforded reasonable opportunity for private consultation with his counsel. It is further

ORDERED that, on order of a court in the Western District of Missouri, the person in charge of the corrections facility where Defendant is confined deliver the defendant to a United States Marshal for his appearance in connection with a court proceeding.

          /s/ Robert E. Larsen
          ROBERT E. LARSEN
          United States Magistrate Judge

Kansas City, Missouri
March 20, 2007