```
 1                  IN THE UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF MISSOURI
 2                          WESTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,     )
                                   )
 5                    Plaintiff,)
                                   )
 6                    vs.          )   Case No. 07-00093-01-CR-W-ODS
                                   )
 7   RINGLING DAN COHN,            )   Thursday, March 13, 2008
                                   )   Kansas City, Missouri
 8                    Defendant.)

 9

10            TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
              BEFORE THE HONORABLE ORTRIE D. SMITH
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:
     FOR THE PLAINTIFF:            Mr. Kenneth Michael Warner
14                                 United States Attorney's Office
                                   400 East 9th Street, 5th Floor
15                                 Kansas City, Missouri 64106

16

17   FOR THE DEFENDANT:            Mr. John O'Connor
                                   Wagstaff & Cartmell
18                                 4740 Grand Avenue, Suite 300
                                   Kansas City, Missouri 64112

19

20

21   COURT REPORTER:               Cynthia M. Johnson, RMR
                                   U.S. Court Reporter
22                                 400 East 9th Street, Room 8552
                                   Kansas City, Missouri 64106
23                                 (816)512-5657

24
     Proceedings reported by computer stenography; transcript
25   produced by computer.
```

```
 1                 THE COURT:  Good afternoon.  Be seated, please.
 2                 United States versus Ringling Dan Cohn.
 3                 Mr. Cohn, hello, again.
 4                 DEFENDANT COHN:  Hello, sir.
 5                 THE COURT:  07-93-01 is the case number.  Mike Warner
 6      for the United States.  John O'Connor appearing with Mr. Cohn.
 7                 Your client wishes to change his plea, Mr. O'Connor?
 8                 MR. O'CONNOR:  Yes, Judge.  If it's okay, he's in a
 9      wheelchair.  If he can remain seated, that would be helpful.
10                 THE COURT:  Sure.
11                 Mr. Warner, would you remind us of the charges and
12      the range of punishment, please?
13                 MR. WARNER:  Judge, the defendant is going to plead
14      guilty to Counts 3, 6, 10, and 12.  All four counts are counts
15      of bank fraud.  The range of penalty for that charge are not
16      more than 30 years imprisonment, not more than five years
17      supervised release, not more than a $1 million fine.  They are
18      class B felonies and there would be a $100 special assessment
19      per count.  That's all, Your Honor.
20                 THE COURT:  I notice, Mr. Warner, the plea agreement
21      contains a joint recommendation with respect to the sentence,
22      however it doesn't appear to be an 11C1C plea agreement.  Am I
23      correct?
24                 MR. WARNER:  That's correct?
25                 THE COURT:  All right.  Mr. Cohn, you understand the
```

1 charges?

2 DEFENDANT COHN: Yes, sir.

3 THE COURT: And you understand the potential
4 punishment that you face upon conviction?

5 DEFENDANT COHN: Yes, Your Honor.

6 THE COURT: In a moment the clerk is going to place
7 you on your oath, Mr. Cohn. I'm going to ask you some
8 questions. Mr. O'Connor will also ask you some questions. My
9 questions will be designed to demonstrate that as you stand
10 here, as you are here today, as you sit here today, you are
11 competent to change your plea; that you know your rights and
12 what rights you'll be giving up and that you're familiar with
13 the terms of the plea agreement.

14 Mr. O'Connor will question you about the facts of the
15 offense because if you plead guilty, I have to be sure you are
16 pleading guilty because you are guilty and for no other reason.

17 Ordinarily, the answers you give to our questions
18 would not be admissible against you in this case or any other
19 case. There is an exception to that general rule. And it is
20 that if you answer falsely while under oath, you could be
21 charged with the crime of perjury and what you say here would
22 be admissible in that case. Do you understand that?

23 DEFENDANT COHN: Yes, Your Honor.

24 THE COURT: Alex?

25 RINGLING DAN COHEN, DEFENDANT, SWORN

1  THE COURT: Let me begin by asking what condition
2  causes you to use the wheelchair.
3  DEFENDANT COHN: I had surgery back in 1985 and I had
4  two ruptured disks at the time. And there's still a sliver on
5  the side of the nerve I couldn't have removed because it would
6  clip the nerve. It just acts up. And I also think a couple
7  other disks on the other side are also blown out.
8  THE COURT: Are you receiving any type of medication?
9  DEFENDANT COHN: No, Your Honor.
10  THE COURT: How old are you?
11  DEFENDANT COHN: I'm 57.
12  THE COURT: How much education have you had?
13  DEFENDANT COHN: High school education.
14  THE COURT: You read, write and understand English?
15  DEFENDANT COHN: Yes, Your Honor.
16  THE COURT: You're not under the influence of
17  medication today?
18  DEFENDANT COHN: No, Your Honor.
19  THE COURT: At the time the offense occurred were you
20  under the influence of alcohol, drugs or medication?
21  DEFENDANT COHN: No, Your Honor.
22  THE COURT: Have you ever been diagnosed as having
23  any form of mental disease or defect of any kind?
24  DEFENDANT COHN: No, Your Honor.
25  THE COURT: Mr. O'Connor, do you have any concerns

1  about your client's competency?

2  MR. O'CONNOR: No, Judge.

3  THE COURT: Mr. Cohn, you have a number of rights
4  which you'll be giving up by pleading guilty today.  I need to
5  review those with you.  And when I finish, if you have
6  questions I will answer your questions.

7  First, you have the right to persist in your plea of
8  not guilty.  If you were to do that then in due course this
9  case would be set for trial.

10  At that trial you would have the right to be
11  represented by an attorney.  You would have the right to the
12  presumption of innocence.  You don't have to prove anything.
13  The government has the burden of proof and must prove each and
14  every essential element of the offense charged, offenses
15  charged beyond a reasonable doubt before you could be
16  convicted.

17  If we were to have a trial in this case you would
18  have the right to have the jury decide your guilt or innocence.
19  That jury would consist of twelve individuals selected randomly
20  from the western half of Missouri.  The jury's verdict would
21  have to be unanimous before you could be convicted.

22  If we were to have a trial in this case you would
23  have the right to call your own witnesses; use the subpoena
24  power of this court to compel witnesses to come forward and
25  testify.  You would have the right to confront and

1   cross-examine any witnesses sponsored by the United States.
2   And you would have the right to present any defenses you may
3   have to the charges against you.
4              If we were to have a trial in this case you could
5   either testify or not.  That would be your decision to make.
6   And if you elected not to testify and if you asked me, I would
7   instruct the jury that the jury could not assume your guilt
8   simply because you chose to remain silent.  If you were to be
9   convicted at trial, you would have the right to appeal that
10  verdict to the Court of Appeals.
11             Mr. Cohn, do you understand your rights?
12             DEFENDANT COHN:  Yes, Your Honor.
13             THE COURT:  Do you have any questions about any of
14  them?
15             DEFENDANT COHN:  No, Your Honor.
16             THE COURT:  Do you understand that if you plead
17  guilty this afternoon and if I accept your plea, you'll be
18  giving up those rights that I just talked about?
19             DEFENDANT COHN:  Yes, Your Honor.
20             THE COURT:  Mr. O'Connor, would you display page 13
21  of the plea agreement to your client?
22             Mr. Cohn, is that your signature on page 13?
23             DEFENDANT COHN:  Yes, Your Honor.
24             THE COURT:  Mr. O'Connor, you witnessed your client's
25  signature?

```
 1              MR. O'CONNOR:  Yes, Judge.
 2              THE COURT:  Both of you signed it today?
 3              MR. O'CONNOR:  Yes, sir.
 4              THE COURT:  But you have had this plea agreement or
 5    some earlier version of it and gone over it with your client
 6    before today.  Is that true?
 7              MR. O'CONNOR:  Yes.  Right up in the holding cell.
 8              THE COURT:  Say that again.
 9              MR. O'CONNOR:  I read it to him today up in the
10    holding cell.  We talked about the contents of it before today
11    but the actual agreement was read to him today.
12              THE COURT:  Mr. Cohn, when you signed this plea
13    agreement, was it your intention that your signature would show
14    your consent to everything contained within the plea agreement?
15              DEFENDANT COHN:  Yes, Your Honor.
16              THE COURT:  Do you fully understand everything that's
17    in the plea agreement?
18              DEFENDANT COHN:  Yes, Your Honor.
19              THE COURT:  Did you read it yourself?
20              DEFENDANT COHN:  Mr. O'Connor read it to me.
21              THE COURT:  All right.  Did you ask him questions?
22              DEFENDANT COHN:  A few, yes, Your Honor.
23              THE COURT:  Has he answered all of your questions?
24              DEFENDANT COHN:  Yes, Your Honor.
25              THE COURT:  Is there anything you would like to ask
```

1  me about the contents of the plea agreement?
2            DEFENDANT COHN: No, Your Honor.
3            THE COURT: Let's look at a few of the provisions
4  together. First, Section 3, beginning at the top of page 2 and
5  carrying over to page 3. That sets out the factual basis for
6  your plea of guilty, Mr. Cohn. And you told me that
7  Mr. O'Connor read the plea agreement to you so I'm going to ask
8  you now if everything contained within that section, Section 3,
9  is true?
10           DEFENDANT COHN: Yes, Your Honor.
11           THE COURT: Section 5 on page 4 reminds us of what
12  Mr. Warner told us a moment ago and that is that the maximum
13  sentence in this case is 30 years of imprisonment. There would
14  be five years of supervised release. Do you understand what
15  supervised release is?
16           DEFENDANT COHN: Yes, Your Honor.
17           THE COURT: Do you understand that following any
18  period of imprisonment there would be certain rules you have to
19  follow and you have to report periodically to a probation
20  officer? If you fail to report or if you violate those rules,
21  your supervised release could be revoked and you could be
22  returned to prison. Do you understand?
23           DEFENDANT COHN: Yes, Your Honor.
24           THE COURT: 6A says that I will consult the
25  sentencing guidelines, however those guidelines are advisory

1  and that my obligation is to impose a sentence which is
2  reasonable under all of the circumstances.
3         Now, what that means to you, Mr. Cohn, as a practical
4  matter is that the guidelines themselves are advisory.  I'm not
5  required to follow the guidelines.  The agreements that you
6  have reached with the government are not binding on me and I
7  can impose a sentence which I believe is reasonable under all
8  of the circumstances up to the statutory maximum of 15 years.
9  Do you understand?
10         DEFENDANT COHN:  Yes, Your Honor.
11         THE COURT:  Paragraph, section rather, Section 10
12 with its subparagraphs A through K set out the attorneys' best
13 judgment as to what a conviction here would result in under the
14 sentencing guidelines.  And these are very fine lawyers,
15 Mr. Cohn.  They probably are right.  But I'll have to make my
16 own calculation with the assistance of the probation
17 department.  It may be that my calculation is exactly the same
18 as those contained in Section 10.  It may be that my
19 calculation is different.  And if they are different, it may
20 result in a sentence greater than what you hoped for.  Do you
21 understand that?
22         DEFENDANT COHN:  Yes, Your Honor.
23         THE COURT:  In Paragraphs 15 and 16 of the plea
24 agreement, Mr. Cohn, you give up some important rights.
25         Paragraph 15 says you give up the right to appeal the

1 finding of guilt or the sentence you receive. Paragraph 16
2 says that you give up any rights you might otherwise have to
3 obtain information about your case under the Freedom of
4 Information Act or the Privacy Act of 1974. You knew those
5 provisions were in the plea agreement?
6        DEFENDANT COHN: Yes, Your Honor.
7        THE COURT: Do you understand that if those
8 provisions were not in the plea agreement you might have the
9 right to appeal, might have the right to appeal the finding of
10 guilt but certainly the sentence imposed and you might have the
11 right to get information about your case under those two
12 federal laws?
13        DEFENDANT COHN: Yes, Your Honor.
14        THE COURT: And you're asking me to accept this plea
15 agreement with those provisions in it?
16        DEFENDANT COHN: Yes, Your Honor.
17        THE COURT: I'm flipping through the plea agreement,
18 Mr. Warner, looking for a section that relates to restitution
19 and I'm not seeing it. Is this case governed by the Mandatory
20 Victim Restitution Act?
21        MR. WARNER: It would be, Your Honor. We do not have
22 at this point in time an exact restitution figure. We are
23 confident per the plea agreement and the paragraph, the
24 subparagraph in Paragraph 10 that the range would be between
25 120,000 but less than 200,000. But the exact figure I think

1  may be subject to some calculations still and some discussions
2  between the parties perhaps.
3      THE COURT:  Okay.  Mr. Cohn, this case very likely is
4  going to be controlled and governed by the Mandatory Victim
5  Restitution Act, which means that I'm required to enter an
6  order at sentencing directing that you repay monies taken from
7  victims.  It may be that you and I will disagree on the amount
8  of restitution.  What I need for you to understand is that I
9  won't allow you to withdraw your guilty plea just because you
10 don't like the amount of restitution that is ordered; just
11 because you don't like the sentence you receive or just because
12 you don't like the conditions of supervised release which are
13 imposed.  Do you understand?
14      DEFENDANT COHN:  Yes, Your Honor.
15      THE COURT:  At least as to restitution I don't think
16 this plea agreement would keep you from appealing that order
17 unless I'm overlooking something but I'll leave that to
18 Mr. O'Connor to advise you.
19      Have any promises been made about the sentence I'm
20 going to give you if you plead guilty?
21      DEFENDANT COHN:  No, Your Honor.
22      THE COURT:  You understand that's up to me?
23      DEFENDANT COHN:  Yes, Your Honor.
24      THE COURT:  Has anyone threatened you, coerced you or
25 bullied you in any way to get you to plead guilty?

```
1                DEFENDANT COHN:  No, Your Honor.
2                THE COURT:  Have you had enough time to think about
3    it?
4                DEFENDANT COHN:  Yes, Your Honor.
5                THE COURT:  If I were to recess the hearing this
6    afternoon, which I'm willing to do, to give you more time to
7    discuss it with family, friends or Mr. O'Connor, do you think
8    you might change your mind?
9                DEFENDANT COHN:  No, Your Honor.
10               THE COURT:  Are you satisfied with Mr. O'Connor as
11   your attorney?
12               DEFENDANT COHN:  Yes, Your Honor.
13               THE COURT:  Has he done everything you asked him to
14   do?
15               DEFENDANT COHN:  Yes, Your Honor.
16               THE COURT:  Did he do anything you told him not to
17   do?
18               DEFENDANT COHN:  No, Your Honor.
19               THE COURT:  Has he been reasonably accessible to you?
20               DEFENDANT COHN:  Yes, Your Honor.
21               THE COURT:  If you called for him and he was
22   unavailable, did he or someone in his office get back to you
23   promptly?
24               DEFENDANT COHN:  Yes, Your Honor.
25               THE COURT:  Did you ask him to do any investigation
```

1  that he failed to do?
2          DEFENDANT COHN:  No, Your Honor.
3          THE COURT:  Did you ask him to talk to any witnesses
4  that he failed to talk to?
5          DEFENDANT COHN:  No, Your Honor.
6          THE COURT:  Did he review the government's evidence
7  personally and then go over that evidence with you so you would
8  know what the evidence would be at trial?
9          DEFENDANT COHN:  Yes, he did, Your Honor.
10         THE COURT:  Did you ask him to file a motion to
11 exclude or suppress any of that evidence at trial?
12         DEFENDANT COHN:  I don't recall, Your Honor, but I
13 don't think so.
14         THE COURT:  Did you ask him to file any motions of
15 any kind?
16         DEFENDANT COHN:  No, Your Honor.
17         THE COURT:  As you sit here this afternoon do you
18 have any complaints at all about Mr. O'Connor as your attorney?
19         DEFENDANT COHN:  No, Your Honor.
20         THE COURT:  Mr. Warner, would you tell me what your
21 evidence would be at trial, please?
22         MR. WARNER:  Judge, if acceptable I would also
23 incorporate by reference the facts in Paragraph 3 of the plea
24 agreement.
25         THE COURT:  Record will reflect that those facts are

1  incorporated.

2  MR. WARNER: Thank you.

3  Very briefly, Your Honor, the evidence would have
4  shown between the approximate dates of July of '03 and
5  September of '05 the defendant defrauded federally insured
6  financial institutions here in Kansas City. Essentially, the
7  evidence would have shown that the defendant fraudulently
8  misrepresented his authority or purpose in withdrawing funds
9  from the trust accounts of a man who is now deceased by the
10 name of Griffith Coombs. Mr. Coombs was a person for whom the
11 defendant had purported guardianship and other legal
12 responsibilities or relationships for and with.

13 The evidence would have shown that the defendant
14 exceeded his authority, misrepresented his authority to
15 federally insured financial institutions and withdrew money
16 from the trust accounts of Mr. Coombs for purposes other than
17 the care and benefit of Mr. Coombs, primarily his own self use
18 of the funds or for self enrichment. That's all, Your Honor.

19 THE COURT: And these banks and trust companies, I
20 assume, were federally insured?

21 MR. WARNER: Yes, Your Honor.

22 THE COURT: You may have mentioned that. If so, I
23 missed it.

24 Mr. O'Connor, can Mr. Warner make a submissible case
25 against your client?

1       MR. O'CONNOR: Yes, Judge.

2       THE COURT: Would you ask him a few questions,
3  please, to establish a factual basis?

4       MR. O'CONNOR: Yes, Your Honor.

5       Mr. Cohn, as to Count 3, do you agree that on
6  October 30 of 2003 in the Western District of Missouri with the
7  intent to defraud and attempt to execute a scheme to defraud
8  Country Club Bank, a financial institution whose money is
9  insured by the Federal Deposit Insurance Corporation by
10 possessing, presenting and cashing a forged check, No. 3825
11 dated October 30, 2003 drawn on the account of Griffith Coombs,
12 Country Club Bank in the amount of $3,500, thereby taking money
13 and funds to which you were not entitled?

14      DEFENDANT COHN: Yes.

15      MR. O'CONNOR: You understand that's bank fraud,
16 Count 3, violation of Title 18, United States Code, Section
17 1344?

18      DEFENDANT COHN: Yes.

19      MR. O'CONNOR: What is your plea to that charge?

20      DEFENDANT COHN: Guilty.

21      MR. O'CONNOR: As to Count 6, do you agree that on or
22 about July 15, 2004, in Kansas City, Missouri, Western
23 District, you knowingly and with intent to defraud executed,
24 attempted to execute a scheme to defraud Commerce Bank, an
25 institution which deposits were federally insured by the

1  Federal Deposit Insurance Corporation in that you submitted an
2  antique furniture repair receipt dated July 15, 2004, in the
3  amount of $5,000 to Commerce Trust for reimbursement from the
4  trust account of Griffith Coombs to defraud, you did take money
5  or funds to which you were not entitled, $5,000?
6              DEFENDANT COHN:  Yes.
7              MR. O'CONNOR:  You agree that's also in violation of
8  Title 18 United States Code 1344, bank fraud?
9              DEFENDANT COHN:  Yes.
10             MR. O'CONNOR:  What is your plea to that charge?
11             DEFENDANT COHN:  Guilty.
12             MR. O'CONNOR:  As to Count 10, do you agree that on
13 December 27, 2004 in the Western District of Missouri with the
14 intent to defraud you executed, attempted to execute a scheme
15 to defraud Commerce Trust Company, a division of Commerce Bank
16 insured by the Federal Deposit Insurance Corporation, by
17 requesting four gift checks each in the amount of $11,000
18 totaling $44,000, issued from the trust account of Griffith
19 Coombs and provided to Maggie Ciurej, Shunte Johnson, Telissa
20 A. Moore and LaShay McLaughlin, by such scheme to defraud,
21 control money or funds to which you were not entitled to,
22 $44,000?
23             DEFENDANT COHN:  Yes.
24             MR. O'CONNOR:  These are all in violation of Title 18
25 Section 1344, bank fraud.  What is your plea to Count 10?

1         DEFENDANT COHN:  Guilty.

2         MR. O'CONNOR:  As to Count 12, you agree that on or
3    about January 15, 2005, Kansas City, Missouri, Western District
4    of Missouri, you knowingly and with intent to defraud executed
5    and attempted to execute a scheme to defraud Commerce Trust
6    Company, a division of Commerce Bank, a financial institution
7    whose deposits are insured by the Federal Deposit Insurance
8    Corporation and that you requested eleven gift checks each in
9    the amount of $11,000, totaling $121,000, be issued from the
10   trust account of Griffith Coombs, provided to you, Patricia
11   Foreman, LaShay McLaughlin, LaKesha McLaughlin, LaShonda
12   McLaughlin, Michael D. Simmons, Joetta Bowie, Thecil Johnson,
13   Shunte Johnson, Letissa A. Moore, and Maggie Ciurej.  And by
14   such scheme to defraud, the defendant took the money which he
15   was not entitled $121,000?

16        DEFENDANT COHN:  Yes.

17        MR. O'CONNOR:  All in violation of Title 18, United
18   States Code, Section 1344, bank fraud?

19        DEFENDANT COHN:  Yes.

20        MR. O'CONNOR:  What is your plea to Count 12?

21        DEFENDANT COHN:  Guilty.

22        THE COURT:  Mr. O'Connor, why is the plea of guilty
23   to Counts 3, 6, 10 and 12 in Mr. Cohn's best interest?

24        MR. O'CONNOR:  I believe the government has
25   sufficient evidence to prove he's guilty beyond a reasonable

1  doubt.  I think by pleading guilty he gets acceptance of
2  responsibility, early acceptance of responsibility.  We do have
3  an agreement as to the sentence although that's up to the Court
4  but I think the sentence takes into account the crimes that
5  occurred.  I think the guideline calculation in this case and
6  the other counts would be for a more significant sentence.
7  Because the defendant is, in fact, guilty, I believe it is in
8  his best interest to plead guilty.
9              THE COURT:  On his behalf do you ask me to accept the
10 plea agreement?
11             MR. O'CONNOR:  I do, Your Honor.
12             THE COURT:  Mr. Cohn, do you want me to accept this
13 plea agreement?
14             DEFENDANT COHN:  Yes, Your Honor.
15             THE COURT:  Mr. Warner?
16             MR. WARNER:  Yes, Your Honor.
17             THE COURT:  The plea agreement is accepted.
18             And now, Mr. Cohn, I will ask you to enter your plea
19 to Counts 3, 6, 10 and 12 of the indictment.  Are you guilty or
20 not guilty?
21             DEFENDANT COHN:  Guilty, Your Honor.
22             THE COURT:  I'll accept Mr. Cohn's plea of guilty and
23 ask the probation department to do an investigation prior to
24 sentencing.
25             In accepting Mr. Cohn's plea I would like for the

```
 1  record to reflect that I make the following specific findings.
 2  I find that Mr. Cohn understands the charges against him and
 3  the potential consequences of his plea of guilty.  That he has
 4  been advised of his rights, that he intelligently and
 5  voluntarily waives those rights; that he has been ably and
 6  competently assisted by Mr. O'Connor his attorney.  That he
 7  suffers from no mental disease or defect that would excuse his
 8  conduct under the law or limit his ability to aid in his own
 9  defense.  That his decision to plead guilty has been made
10  freely voluntarily and without coercion; that there is a
11  factual basis for his pleas of guilty.  And upon this record I
12  find Mr. Cohn guilty beyond a reasonable doubt of the offenses
13  charged in Counts 3, 6, 10 and 12 of the indictment.
14           Mr. Cohn, I have asked the probation department to do
15  an investigation.  Mr. O'Connor will advise you concerning your
16  cooperation.  When the investigation is finished, a report will
17  be prepared.  You'll have a chance to read that report and make
18  objections to the factual findings or guideline applications
19  contained in the report.
20           Sentencing will be scheduled for Thursday, June 26 of
21  this year at 11:15 a.m.  June 26 at 11:15.  And if we have a
22  scheduling conflict, we'll try to work with you.
23           Mr. Cohn, have you understood everything that's
24  happened here this afternoon?
25           DEFENDANT COHN:  Yes, Your Honor.
```

```
1            THE COURT:  Do you have any questions?
2            DEFENDANT COHN:  No, Your Honor.
3            THE COURT:  Mr. O'Connor, anything further?
4            MR. O'CONNOR:  No, thank you, Judge.
5            THE COURT:  Mr. Warner?
6            MR. WARNER:  No, Your Honor.
7            THE COURT:  Thank you all.  We're adjourned.
8                            *   *   *
9                           CERTIFICATE
10       I certify that the foregoing is a correct transcript
11  from the record of proceedings in the above-entitled matter.
12
13  12/10/2008                    /s/ Cynthia M. Johnson
```